**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BROOKLYN DISTILLING COMPANY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 1:10-cv-04903-NG-RML** |
| v. ) | |
| ) | |
| BREUCKELEN DISTILLING COMPANY INC. ) | |
| and BRAD ESTABROOKE, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT...................................................................................................................2

DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO
SUMMARY JUDGMENT OF NON-INFRINGEMENT OR INVALIDITY OF
PLAINTIFF'S FEDERALLY-REGISTERED REGISTERED TRADEMARK...............2

I  DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE
ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
PLAINTIFF'S CLAIM FOR INFRINGEMENT OF ITS
FEDERALLY-REGISTERED TRADEMARK.........................................2

II  DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE
ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
THEIR DEFENSES UNDER SECTIONS 2(a) AND 2(e)(3) OF
THE LANHAM ACT AND BROOKLYN IS ENTITLED TO
JUDGMENT AS A MATTER OF LAW *SUA SPONTE* ON
THOSE DEFENSES...............................................................................6

A.  Defendants' Motion Should Be Denied for Failure to File a
Statement of Undisputed Facts as to Their Invalidity
Defenses...........................................................................................6

B.  Defendants Have Failed to Show That There is No Genuine
Issue of Material Fact on Their Invalidity Defenses Under
§§ (2)(a) and (e)(3) of the Lanham Act and the Court
Should Grant Summary Judgment Against Defendants on
These Defenses. ...............................................................................7

CONCLUSION ..............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*A. Smith Bowman Distillery, Inc. v. Schenely Distillers, Inc.*,
  198 F. Supp. 822 (D. Del. 1961) ......................................................5

*Beyer v. County of Nassau*,
  524 F.3d 160 (2d Cir. 2008) ...........................................................2

*Cadbury Beverages, Inc. Cott Corp.*,
  73 F.3d 474, 478 (2d Cir. 1996) .....................................................3, 4

*Celotex Co. v. Catrett*,
  477 U.S. 317 (1986) .........................................................................8

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
  933 F.2d 162 (2d Cir. 1991) ...........................................................8

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
  352 F.3d 775 (2d Cir. 2003) ...........................................................2

*Eaton Allen Corp. v. Paco Impressions Corp.*,
  405 F. Supp. 530 (S.D.N.Y. 1975) ..................................................5

*Grotian, Hefferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*,
  523 F.2d 1331 (2d Cir. 1975) ..........................................................4, 5

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
  729 F. Supp. 2d 246 (D.D.C. 2010)..............................................11, 13, 14

*In re California Innovations, Inc.*,
  329 F.3d 1334 (Fed. Cir. 2003) ......................................................9

*In re Spirits International, N.V.*,
  563 F.3d 1347 (Fed. Cir. 2009) ...................................................11, 12, 13, 14

*Intl' Ass'n of Bricklayers and Allied Craftsmen v. Gallante*,
  912 F. Supp. 695 (S.D.N.Y. 1996) ..................................................7

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*,
  192 F.3d 337 (2d Cir. 1999) ...........................................................7

*Leon Finker, Inc v. Schlussel,*
    469 F. Supp. 674 (S.D.N.Y. 1979) ................................................ 5

*McGregor-Doniger, Inc. v. Drizzle, Inc.,*
    599 F.2d 1126,1133 (2d Cir. 1979) ............................................... 5

*Montgomery v. Scott,*
    802 F. Supp. 930 (W.D.N.Y. 1992) ............................................... 7

*Riverhead Paints Plus, Inc v. PPG Indus., Inc.,*
    2 USPQ2d 2035 (E.D.N.Y. 1987) ............................................. 3, 4

*T.Y., K.Y., on Behalf of T.Y. v. New York City Dept. of Education,*
    584 F.3d 412 (2d Cir. 2009) ...................................................... 6

*The Sports Authority, Inc v. Prime Hospitality Corp.,*
    89 F.3d 955 (2d Cir. 1996) ........................................................ 5

*Universal City Studios, Inc. v. Nintendo Co.,*
    746 F.2d 112 (2d Cir. 1984) .................................................... 3, 4

**STATUTES**

15 U.S.C. § 2(e)(3) ...................................................................... *passim*

15 U.S.C. § 1052(a) ...................................................................... 8, 9

15 U.S.C. § 1052(e) ......................................................................... 6

15 U.S.C. § 1114(1)(a) ..................................................................... 3

19 U.S.C. § 3511(a)(2) .................................................................... 10

19 U.S.C. §3512(d) ....................................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ..................................................................... 2, 6, 7

Fed. R. Civ. P. 56(e) ................................................................. *passim*

Fed. R. Evid. 602 ..................................................................... 15, 16

Fed. R. Evid. 701 ..................................................................... 15, 16

Fed. R. Evid. 801 ......................................................................... 15

Fed. R. Evid. 802 ......................................................................... 14

Lanham Act § 2(a) .................................................................................................1, 6, 8, 12, 13

Lanham Act § 32(a)(1) ...........................................................................................................3

Lanham Act §2(e)(3) .........................................................................................................7, 12

Statement of Administrative Action, Agreement on Trade-Related Aspects of Intellectual
Property Rights, H. Doc. 103-316, Vol. 1, Sec. B.1.e. (Sept. 27, 1994). ................................10

The Uruguay Round Agreements Act, Pub. L. 103-465, 013 Stat. 4809 ........................................9

*Trademark Manual of Examining Procedure* § 1210.08(a) ............................................................9

## INTRODUCTION

Defendants seek summary judgment of non-infringement of Brooklyn's registered mark and invalidation of Brooklyn's registration on several grounds under the Lanham Act. They base this broadside attack on a grand total of two undisputed facts, which together establish the entirely unremarkable fact that Defendants have not counterfeited Brooklyn's mark.

Defendants' only basis for requesting a judgment of non-infringement as a matter of law is the claimed dissimilarity of the parties' marks as they appear in a side-by-side comparison. For the reasons discussed below, that is an insufficient basis upon which to summarily dismiss Brooklyn's entire case because the marks are identical when used orally, as they are predominantly used in the marketing of the parties' gins, and other key *Polaroid* factors, including evidence of actual confusion, support a finding of likelihood of confusion, and in fact entitle Brooklyn to a preliminary injunction.

Defendants' showing in support of summary judgment on its invalidity defenses under §§ 2(a) and 2(e)(3) of the Lanham Act is even weaker. Defendants have not come close to rebutting the presumption of validity of Brooklyn's registered mark, much less showing that they are entitled to judgment as a matter of law. Because gin was not distilled in Brooklyn between the start of national Prohibition in 1920 and the opening of Defendants' gin distillery in August 2010 (currently the only one in New York City), Defendants have not shown and cannot possibly show that Brooklyn is a place known for or renowned for gin, that there is an association between Brooklyn and gin, or that consumers around the United States would believe that Brooklyn's gin is made in Brooklyn or would base their purchase decisions on that belief. Brooklyn, not Defendants, is entitled to judgment as a matter of law on these defenses.

## ARGUMENT

### DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OR INVALIDITY OF PLAINTIFF'S FEDERALLY-REGISTERED REGISTERED TRADEMARK.

The standards on a motion for summary judgment are well-settled.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  "A court reviewing a motion for summary judgment must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Id.* (*quoting Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)).  Rule 56(e) of the Federal Rules of Civil Procedure provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

### I
### DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM FOR INFRINGEMENT OF ITS FEDERALLY-REGISTERED TRADEMARK.

Defendants seek judgment as a matter of law on Brooklyn's claim for infringement of its registered mark on the grounds that "Plaintiff has admitted in its sworn responses to interrogatories that Defendants do not use its federally registered trademark, the only mark upon which Plaintiff sues for infringement" and that "Defendants' gin is substantially dissimilar to Plaintiff's trademark." Not. of Mot. at 2.  Defendants cite no legal authority in support of their

first ground, and two cases, *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112 (2d Cir. 1984) and *Riverhead Paints Plus, Inc v. PPG Indus., Inc.*, 2 USPQ2d 2035 (E.D.N.Y. 1987), in support of their second one.  Neither establishes non-infringement as a matter of law.

It is not surprising that Brooklyn's first ground is unsupported by any legal authority.  It embodies a theory of trademark infringement that would excuse any form of infringement short of counterfeiting.  The plain language of § 32(a)(1) of the Lanham Act forecloses any such argument because it makes actionable the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark."  15 U.S.C. § 1114(1)(a).  The undisputed fact that Defendants have not counterfeited Brooklyn's registered mark obviously does not mean that they cannot infringe it through their use of "Breuckelen" and "Breuckelen Distilling," which colorably imitate Brooklyn's registered mark, especially in sound.

Defendants' second ground -- their rather awkward claim that "Defendants' gin is substantially dissimilar to Plaintiff's trademark" -- is supported neither by the authorities that they cite nor by the record as a whole, and it is belied by the contrary allegations regarding the confusing similarity of the marks "Breuckelen" and "Breuckelen Distilling Company," and "Brooklyn Distilling Co." and design, that Breuckelen made just last month in Opposition No. 91198557 before the Trademark Trial and Appeal Board.  Statement of Material Facts ("Stmt.") ¶¶ 2, 21-23.  Summary judgment "in a trademark action may be appropriate in certain circumstances, where the undisputed evidence would lead only to one conclusion as to whether confusion is likely," *Cadbury Beverages, Inc. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996) (reversing summary judgment of non-infringement), but this case does not involve such circumstances.

3

In *Universal City Studios*, the Second Circuit held that "[q]uestions regarding the likelihood of confusion are normally factual in nature," but that courts could grant summary judgment on the issue of infringement if "the products or marks are so dissimilar that no question of fact is presented." 746 F.2d at 9-10 (citations omitted). The Second Circuit affirmed the district court's finding of "great differences" between the parties' products, a "Donkey Kong" video game and the "King Kong" movies, holding that "the two characters and stories are so different that no question of fact was presented on the likelihood of consumer confusion." Id. at 11, 14. Here, the parties' goods are identical, not greatly different. Stmt. ¶¶ 19-20.

The *Riverhead Paints Plus* case is also inapposite. The court there acknowledged that a "determination of whether there is a likelihood of confusion as to the source of the goods at issue normally requires a careful analysis of [the *Polaroid*] factors," 2 USPQ2d at 2037, but accepted the parties' invitation simply to compare the products side-by-side. After doing so, the court found, in the absence of any evidence of actual confusion, that their marks were not similar because "the use of the brand names ["Paints Plus" and "Pittsburgh Paints"] by both Riverhead Paints and PPG on their products in connection with their marks eliminates any likelihood of confusion by the slight similarity in the two marks." *Id*. at 2038.

Because the *Riverhead Paints Plus* court relied solely upon a visual comparison of the parties' marks, it did not consider that "[t]rademarks, like small children, are not only seen but heard." *Grotian, Hefferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1340 (2d Cir. 1975). Reliance solely on a visual side-by-side comparison of the marks here would be improper because Defendants do not dispute the paramount significance of the oral use of marks in the marketing and sale of gin, because the parties' marks may be depicted in block letters on drink menus in bars and restaurants, Stmt. ¶¶ 10-18, and because Defendants admit that

in bars and restaurants, the parties' packaging is typically not used by patrons or even visible to them. Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction ("Opp.") at 23.

Because the parties' goods are identical, Stmt. ¶ 19, "'the degree of similarity in the marks necessary to support a finding of infringement is less than in the case of dissimilar, non competing products.'" *Eaton Allen Corp. v. Paco Impressions Corp.*, 405 F. Supp. 530, 533 (S.D.N.Y. 1975) (*quoting A. Smith Bowman Distillery, Inc. v. Schenely Distillers, Inc.*, 198 F. Supp. 822, 826-28 (D. Del. 1961)). Because the parties' goods are frequently marketed and purchased by the spoken word, Stmt. ¶¶ 10-18, the similarity of the parties' marks in sound is given particular importance. *Leon Finker, Inc v. Schlussel*, 469 F. Supp. 674, 678-79 (S.D.N.Y. 1979); *Grotian, Hefferich*, 523 F.2d at 1340-41. Indeed, "in the case of alcoholic beverages, the degree of similarity need not be as high as usual since the likelihood of confusion is greater because drinks are frequently purchased at bars and clubs without the purchaser seeing any bottles or labels." *A. Smith Bowman Distillery*, 198 F. Supp. at 827-28. Defendants have offered no admissible evidence to dispute Brooklyn's showing that the pronunciation of "Brooklyn" and "Breuckelen," the only source-identifying portions of the parties' marks that are used when they are spoken, is identical. Stmt. ¶¶ 3-8.

Viewing the evidence, including Brooklyn's evidence of actual confusion, Stmt. ¶ 24, in the light most favorable to Brooklyn, and drawing all reasonable inferences in Brooklyn's favor, including those arising from Defendants' allegations before the TTAB, Stmt. ¶¶ 2, 21-23, a reasonable jury could "conclude that the marks are similar in 'the context in which the respective marks are generally presented.'" *The Sports Authority, Inc v. Prime Hospitality Corp.*, 89 F.3d 955, 963 (2d Cir. 1996) (reversing summary judgment of non-infringement) (*quoting McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126,1133 (2d Cir. 1979)). Against the backdrop of the

other *Polaroid* factors, a reasonable jury could clearly find a likelihood of confusion.  The Court

accordingly should deny Defendants' motion.

**II**

**DEFENDANTS HAVE FAILED TO SHOW THAT THEY ARE ENTITLED TO
JUDGMENT AS A MATTER OF LAW ON THEIR DEFENSES UNDER SECTIONS 2(a)
AND 2(e)(3) OF THE LANHAM ACT AND BROOKLYN IS ENTITLED TO
JUDGMENT AS A MATTER OF LAW *SUA SPONTE* ON THOSE DEFENSES.**

**A.      Defendants' Motion Should Be Denied for Failure to File a
Statement of Undisputed Facts as to Their Invalidity Defenses.**

Defendants move for summary judgment of invalidity on the ground that "Plaintiff does

not, and cannot, own the word 'Brooklyn' in association with the sale of gin.  This is not the

Plaintiff's mark, and this would otherwise violate the Lanham Act under at least two separate

provisions, 15 U.S.C. §§ 1052(a) and 1052(e)."  Not. of Mot. at 2.

Local Rule 56.1 of the United States District Court for the Eastern District of New York

provides that on a motion for summary judgment "there shall be annexed to the notice of motion

a separate, short and concise statement, in numbered paragraphs, of the material facts as to which

the moving party contends there is no genuine issue to be tried.  Failure to submit such a

statement may constitute grounds for denial of the motion."  "Local Rule 56.1 was adopted to aid

the courts in deciding summary judgment motions by quickly identifying disputed material facts.

The Rule requires that any motion for summary judgment by accompanied by a list of the

'material facts as to which the moving party contends there is no genuine issue to be tried.'

Local Civil Rule 56.1(a).  The requirement is strict; failure to submit a Rule 56.1 statement with

a motion for summary judgment may result in the motion's denial."  *T.Y., K.Y., on Behalf of T.Y.*

*v. New York City Dept. of Education*, 584 F.3d 412, 417 (2d Cir. 2009).

Defendants' Local Rule 56.1 Statement of Material Facts contains no statement of

material facts relating to Defendants' invalidity ground.  Defendants have completely failed to

6

identify for the Court (and Brooklyn) those facts regarding invalidity that it deems to be undisputed. This failure is inexcusable in light of Defendants' claim that were prepared to move for summary judgment on an expedited basis. The Court should deny Defendants' motion regarding invalidity out of hand for failure to comply with Local Rule 56.1(a).

**B.    Defendants Have Failed to Show That There is No Genuine Issue of Material Fact on Their Invalidity Defenses Under §§ (2)(a) and (e)(3) of the Lanham Act and the Court Should Grant Summary Judgment Against Defendants on These Defenses.**

Because Brooklyn "sues for infringement of its registered mark, [Defendants] bear[] the burden to rebut the presumption of [the] mark's protectibility by a preponderance of the evidence." *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 344 (2d Cir. 1999); Stmt. ¶ 25. Defendants do not come close to carrying their burden of rebutting the presumption of validity of Brooklyn's registered mark, much less of showing that they are entitled to judgment as a matter of law on their defenses under §§ 2(a) and 2(e)(3) of the Lanham Act. Indeed, they fall so far short that the Court should grant summary judgment *sua sponte* against them.

"Moving for summary judgment entails some risk for the moving party: A motion for summary judgment searches the record, and it is well settled that if such a search reveals that there are no genuine issues of material fact, but that the law is on the side of the *non-moving* party, then 'summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56'." *Intl' Ass'n of Bricklayers and Allied Craftsmen v. Gallante*, 912 F. Supp. 695, 700 (S.D.N.Y. 1996) (emphasis in original) (*quoting Montgomery v. Scott*, 802 F. Supp. 930, 935 (W.D.N.Y. 1992)). Awarding summary judgment to the non-moving party is appropriate where the decision is based upon the same issues as the original motion and the moving party had significant incentive to offer compelling evidence in

support of its own motion, given that a court cannot draw favorable inferences on its behalf. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167-68 (2d Cir. 1991).

As shown below, summary judgment against Defendants on their defenses under §§ 2(a) and 2(e)(3) of the Lanham Act is justified because the record on this motion shows "that there is an absence of evidence to support [Defendants'] case." *Celotex Co. v. Catrett*, 477 U.S. 317, 325 (1986). Defendants had every incentive to "take their best shot" on these defenses because they invoked them on Brooklyn's preliminary injunction motion, and had nearly three months, following the filing of their answer and counterclaims on December 1, 2010, to gather supporting evidence. Defendants' counsel stated in his February 14, 2011 letter to the Court seeking leave to file the motion that "all the legal and factual issues that Defendants would raise in their summary judgment motion would be subsumed in their Opposition papers," and Defendants waived their right to file a reply. Under the circumstances, Brooklyn, not Defendants, is entitled to judgment as a matter of law on these defenses.

1. **Defendants Have Failed to Show That There is No Genuine Issue of Material Fact That the Registration of Brooklyn's Mark Violates § 2(a) of the Lanham Act. and Summary Judgment Should Be Granted Against Them.**

Section 2(a) of the Lanham Act prohibits the registration of "a geographical indication which, when used on or in connection with . . . spirits, identifies a place other than the origin of the goods and is first used" after 1996. 15 U.S.C. § 1052(a). In opposition to Brooklyn's motion

for a preliminary injunction, Defendants argue that "[e]ach of the four conditions of Section 1052(a), clause three, are satisfied here," Opp. at 10, but their defense fails on the very first one.[1]

Defendants blithely assert, with no analysis or citation of authority, that "'Brooklyn' is an obvious 'geographical indication,' indicating Brooklyn, New York," *id.*, but the term "geographical indication" has a specific and limited meaning under § 2(a) that is overlooked by Defendants.  The PTO Examination Guide cited by Defendants to show that gin is a "spirit" within the meaning of § 2(a) makes clear that "[a] designation is considered a geographical indication under Sec. 2(a) if it identifies the applicant's wines or spirits as originating in a territory *known for a given quality, reputation, or other characteristic associated with wines or spirits*."  Opp. at 10, n.1 (Sherinsky Decl. Ex. 9) (emphasis added). *See also Trademark Manual of Examining Procedure* § 1210.08(a) ("A designation is considered a *geographical indication* under §2(a) if it identifies the applicant's wines or spirits as originating in a territory known for a given quality, reputation, or other characteristic associated with wines or spirits.") (emphasis in original).

The PTO Examination Guide explains that in "implementing the TRIPS Agreement through the Uruguay Round Agreements Act ('URAA'), Pub. L. 103-465, 013 Stat. 4809, Congress approved a Statement of Administrative Action ('SAA') that provided, in part:

'Geographical indications' are defined in TRIPS Article 22.1 as 'indications which identify a good as originating in the territory of a Member, or a region or locality in that territory,

---

[1]As shown below, Defendants' § 2(a) claim also fails on the additional elements of that claim that are identical to those under § 2(e)(3), but it is not necessary for the Court to consider those elements to dispose of the § 2(a) claim.  Any claim by Defendants that Brooklyn's registered mark is "deceptive" within the meaning of § 2(a) of the Lanham Act fails as a matter of law because the Act "gives geographically deceptively misdescriptive marks the same treatment as geographically deceptive marks under §1052(a)," *In re California Innovations, Inc.*, 329 F.3d 1334, 1340 (Fed. Cir. 2003), and the registration of Brooklyn's mark does not violate § 2(e)(3).

where a given quality, reputation or other characteristic of the good is essentially attributable to its geographical origin.' *The Administration expects that this definition will be applied in the context of trademark registration and that a 'geographical indication' as used in this provision will be interpreted to comprise only those areas which have a reputation for being associated with the goods at issue. Obscure areas or those that do not have a reputation or other characteristics generally associated with wines or spirits should not be prohibited from registration.* Statement of Administrative Action, Agreement on Trade-Related Aspects of Intellectual Property Rights, H. Doc. 103-316, Vol. 1, at 1000, Sec. B.1.e., (Sept. 27, 1994). 19 U.S.C. Sec. 3511(a)(2) and 3512(d)." Examination Guide n.3 (emphasis added).

Defendants offer no evidence that Brooklyn is known for a given quality, reputation, or other characteristic associated with gin or that Brooklyn has a reputation for being associated with gin. Stmt. ¶¶ 26-27. No such association exists because, as explained by Mr. Estabrooke himself, "there were no distilleries in New York" when he tried to secure financing for his distillery, Stmt. ¶¶ 29, and Defendants' own evidence shows that there have been no distilleries in Brooklyn since some time before National Prohibition began in 1920 and that currently Defendants' distillery identifies its gin as is "the only gin Made in NYC." Stmt. ¶¶ 30-31.

Defendants have failed to show that "Brooklyn" is a "geographical indication" for gin within the meaning of § 2(a) of the Lanham Act, and their defense under § 2(a) fails for this reason alone. Because there is no evidence that Defendants could offer that would show that Brooklyn is a territory known for a given quality, reputation, or other characteristic associated with gin, or an area that has a reputation for being associated with gin, Stmt. ¶¶ 26-33, there is no genuine issue that Brooklyn's registered mark is valid under § 2(a) and summary judgment on Defendants' § 2(a) defense should be granted *sua sponte* to Brooklyn.

**2.** **Defendants Have Failed to Show That There is No Genuine Issue of Material Fact That the Registration of Brooklyn's Mark Violates § 2(e)(3) of the Lanham Act and Summary Judgment Should Be Granted Against Them.**

Section 2(e)(3) of the Lanham Act prohibits the registration of a mark that is primarily geographically deceptively misdescriptive of the goods. 15 U.S.C. § 2(e)(3). A mark is "primarily geographically deceptively misdescriptive" within the meaning of § 2(e)(3) if: (1) its primary significance is a generally known geographic location; (2) the relevant purchasing public would be likely to believe that the goods originate in the place named by the mark (i.e., that a good/place association exists) when in fact the goods do not come from that place; and (3) the misrepresentation is a material factor in the consumer's decision." *In re Spirits International, N.V.*, 563 F.3d 1347, 1350 (Fed. Cir. 2009).

Defendants have failed to establish the threshold element that there is a goods/place association between gin and Brooklyn as a matter of law. Stmt. ¶ 34. A goods/place association is relatively easy to prove if the subject place is known for the production of the subject goods, *see, e.g., Spirits*, 563 F.3d at 1350 (goods/place association shown between vodka and Moscow where record showed that "Moscow is well known for vodka"); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 729 F. Supp. 2d 246, 253 (D.D.C. 2010) (goods/place association shown between cigars and Guantanamo, Cuba because of "ample evidence that cigar tobacco is produced in the Guantanamo province" and because "there is also ample evidence to support the finding that Cuba is well-known for cigars"). But Defendants have not offered and cannot offer any evidence that gin is widely produced in Brooklyn, much less that Brooklyn is well known for gin.

The only basis for a goods/place association offered by Defendants is: (1) a semantic argument based upon a purported distinction between the phrases "Brooklyn Gin" and "Philadelphia lawyer," (2) Brooklyn's bottle, and (3) a double hearsay statement by an

11

unidentified bartender in an article that is inadmissible under Rule 56(e) of the Federal Rules of Civil Procedure and Rules 801-802 of the Federal Rules of Evidence. Stmt. ¶ 34 (Defs.' Ex. F), Opp. at 12-13. Because the relevant purchasing public for purposes of Defendants' § 2(e)(3) defense is the entire gin-consuming public in the United States, *Spirits*, 563 F.3d at 1356,[2] and only Breuckelen has produced gin in Brooklyn since before Prohibition, Stmt. ¶¶ 29-33, Defendants have failed to establish any goods/place association at all, much less that one exists as a matter of law. There is no additional evidence that could establish such an association, and Brooklyn should be granted summary judgment *sua sponte* on Defendants' § 2(e)(3) defense on this basis alone.

In addition to failing to show a goods/place association between Brooklyn and gin, Defendants have not shown that any belief that Plaintiff's gin is made in Brooklyn is a "material factor in the consumer's decision" to buy it as a matter of law. *Spirits*, 563 F.3d at 1350. In *Spirits*, a decision ignored by Defendants in their opposition to Brooklyn's motion for a preliminary injunction, the Federal Circuit reversed the PTO's refusal to register "Moskovskaya" (Russian for "of or from Moscow") for vodka that did not originate in Moscow because the PTO had failed to satisfy the materiality requirement of § 2(e)(3). After surveying the history of the NAFTA Act amendments to § 2 of the Lanham Act and reviewing case law regarding the materiality requirement imposed by the Act, the Federal Circuit held that "it is clear that section (e)(3)--like subsection 2(a), the false advertising provision of the Lanham Act, and the common law--requires that a significant portion of the relevant consuming public be deceived. That

---

[2]Defendants are marketing their gin to this public outside the State of New York, as Defendants currently list accounts in Chicago and anticipate future accounts in Nevada and New Jersey. Santos Reply Decl. Ex. 7.

population is often the entire U.S. population interested in purchasing the product or service."
*Id.* at 1356.

The Federal Circuit held that "to establish a prima facie case of materiality there must be some indication that a substantial portion of the relevant consumers would be materially influenced in the decision to purchase the product or service by the geographic significance of the mark." *Id.* at 1357. The Federal Circuit held that the PTO had not shown that the deception occasioned by the "Moskovskaya" mark was material under this standard even though the PTO had found that Moscow was "reputed for high quality vodka," *id.* at 1350, because the PTO had limited its analysis to Russian-speaking purchasers of vodka. *Id.* at 1357.

In *Guantanamera Cigar,* the most recent court decision to consider materiality under §2(e)(3) following *Spirits,* and another case ignored by Defendants, the court reversed the TTAB's decision in an opposition that "Guantanamera" (Spanish for "having to do with or belonging to the city or province of Guantanamo" in Cuba) for cigars that did not originate in Guantanamo, Cuba was primarily geographically deceptively misdescriptive. The evidence relied upon by the opposer in *Guantanamera* on the materiality element was "(1) 'Cuba's renown and reputation for high quality cigars' and (2) the plaintiff's subjective intent to deceive consumers, evidenced by previously placing 'Guantanamera, Cuba' and 'Genuine Cuban Tobacco' on the packaging" for its "Guantanamera" cigars. *Id.* Defendants' proffered evidence of materiality here is almost identical in nature (though certainly not in strength) to that offered by the opposer in *Guantanamera Cigar*: (1) "many articles . . . detailing that consumers recognize goods made in Brooklyn are assumed to be carefully and artisanally made,"[3] and (2)

---

[3]Defendants allude to "many" articles, but cite only their Ex. K.

Mr. Santos' alleged intended purpose to use the word "Brooklyn" to "capitalize on the positive connotations of artisanal goods now being made in the borough of New York." Opp. at 13.

Although the opposer in *Guantanamera Cigar* proved the fame of Cuba for cigars, the court held that "*Spirits* plainly demands more than a finding of Cuba's reputation for high quality cigars. In *Spirits*, Moscow's renown reputation for vodka was not enough to affirm the TTAB's legal conclusion; likewise, Cuba's renown reputation for cigars is not enough in this case." *Id.* Here, even ignoring that the article relied upon by Defendants is inadmissible hearsay under Fed. R. Evid. 801 and 802 because it is offered to prove the truth of its contents, the article says absolutely nothing about gin and obviously does not establish that Brooklyn is renowned for or famous for its gin. Because evidence that Cuba was famous for high-quality cigars was insufficient as a matter of law in to establish materiality in *Guantanamera Cigars*, a single newspaper article about Brooklyn that never mentions gin obviously cannot show materiality as a matter of law here.

The *Guantanamera Cigars* court also rejected "the plaintiff's false claims on the packaging [as] equally inadequate to satisfy *Spirits*." *Id.* This was because "the registrant's subjective intent provides little, if any, insight into the minds of consumers. Consumers could have numerous reasons as to why they purchase Guantanamera cigars, but without any objective findings, it is difficult to make an accurate conclusion as to whether the geographic misdescription will materially affect a 'substantial portion' of consumers." *Id.*[4] Here,

_____

[4]The applicant's affirmative misrepresentations in *Guantanamera Cigars* were based upon the applicant's marketing materials. *Id.* The court found that the materials were not particularly relevant to the determination whether the mark itself was primarily geographically deceptively misdescriptive under § 2(e)(3), because the "Lanham Act bars registration of *marks* that are primarily geographically deceptively misdescriptive, not marks that are accompanied by deceptive packaging materials." *Id.* (emphasis in original). To the extent that Defendants rely on Brooklyn's packaging here, Opp. at 12, it too is irrelevant.

Defendants claim only that Mr. Santos intends generally to capitalize on the positive connotations of artisanal goods produced in Brooklyn, Opp. at 13; there is no argument, let alone any evidence, that he intends to affirmatively pass off his gin as being produced there. Regardless, as in *Guantanamera Cigars,* Mr. Santos' alleged subjective intent says nothing about what is going on in the minds of a significant portion of the entire American gin-purchasing public, and is insufficient as a matter of law to show materiality.

In their opposition to Brooklyn's preliminary injunction motion, Defendants offer Mr. Estabrooke's declaration and seven third-party declarations. Defendants do not cite these declarations on the invalidity portion of their opposition, but they do mention them in their notice of motion for summary judgment. Because Mr. Estabrooke's declaration and four of the declarations contain testimony that could be interpreted as being offered in support of Defendants' defense under § 2(e)(3), Brooklyn addresses those declarations below.

Mr. Estabrooke testifies that unidentified spirits buyers at unidentified liquor stores that carry Defendants' gin have told him that they dislike Brooklyn's gin because it is not made in Brooklyn, that they believe that consumers buy products specifically because they are made in Brooklyn and place a premium on those products, and that "his product being named Brooklyn but not produced in Brooklyn is misleading." Estabrooke Decl. ¶ 15. This testimony is inadmissible under Fed. R. Civ. P. 56(e) because it is hearsay under Fed. R. Evid. 801-802 and because the unidentified spirits buyers' alleged beliefs about consumer buying habits have not been shown to be based upon established personal knowledge under Fed. R. Evid. 602, or to be within the purview of permissible lay opinion under Fed. R. Evid. 701.

Four other declarants state, in form paragraphs, that they "believe the Brooklyn Gin product's trademark and trade dress can be confusing and misleading for consumers who may

15

believe that this product is made in Brooklyn, when in fact it is produced upstate in Warwick, New York." Mathison Decl. ¶ 11; Kyle Decl. ¶ 6; Hagmann Decl. tenth bullet point; Birnecker Decl. ¶ 9. This testimony is also inadmissible under Fed. R. Civ. P. 56(e).[5] Their testimony about the state of mind of consumers is pure speculation that is not based upon demonstrated personal knowledge under Fed. R. Evid. 602, and that has not been shown to be within the purview of permissible lay opinion under Fed. R. Evid. 701.[6] Substantively, their testimony is not probative of the materiality issue because they purport to testify only about their belief only about what consumers "may" believe about where Brooklyn's gin is made, and say nothing about whether that belief will be material to consumers' decisions to buy the product. Defendants offer no survey, expert testimony, or other objective evidence to show that a substantial portion of American gin consumers will base their decision to buy gin bearing Brooklyn's registered mark on any mistaken belief that it is made in Brooklyn.

The marks "Moskovskaya" for vodka that is not made in Moscow and "Guantanamera" for cigars that are not made in Cuba were found to be eligible for registration in the face of challenges under § 2(e)(3), and the marks "New Amsterdam" for gin and "Manhattan Vodka" for

---

[5]None of these declarants was identified in Defendants' Initial Disclosures or in any supplemental disclosures, Salcedo Decl. ¶ 4; Ex. 3, and their testimony should be excluded on this basis alone.

[6]Declarant Klaus Hagmann does not live in the United States. Declarant Robert Birnecker is a distiller and distilling instructor, not a retailer, and does not testify to any familiarity with consumer buying habits or preferences. Declarant Ronald Kyle is a retailer, but he has been in the liquor business for only two years. Kyle Decl. ¶ 3. Spirits buyer Tara Mathison's testimony is completely belied by the fact that she, like Defendants' declarants Christian Rodriguez, Chris McPherson, and Justin Chearno (all of whom do not claim that Brooklyn's mark is misleading), willingly buys and sells Brooklyn's gin. Mathison Decl. ¶ 6. No prospective on-premise or off-premise customer has declined to purchase Brooklyn's gin because it is not produced in Brooklyn, and "Absolut Brooklyn" vodka, "Old Williamsburg" whiskey, "Manhattan" rye whiskey, and "New Amsterdam" gin have been sold successfully and legally even though none of them is made in the areas identified in their marks. Stmt. ¶¶ 37-39. "Manhattan Vodka" for vodka has been registered to a registrant in Burlingame, California. Salcedo Decl. ¶ 5; Ex. 4/

vodka have been registered to registrants in California. Stmt. ¶¶ 39-40. The PTO concluded that Brooklyn's mark "Brooklyn Gin" and design was registrable for gin that is not made in Brooklyn. Defendants have done absolutely nothing to show that the decision of the PTO was wrong, much less to show that there is no genuine issue of material fact that the registration of Brooklyn's mark is invalid under § 2(e)(3) of the Lanham Act. Because there is no further evidence that would enable Defendants to show invalidity under § 2(e)(3), summary judgment should be granted against Defendants on this defense as well.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' motion for summary judgment of non-infringement and grant Brooklyn summary judgment *sua sponte* on Defendants' Second Counterclaim for cancellation of Brooklyn's registration on the grounds of violation of §§ 2(a) and 2(e)(2) and (e)(3) of the Lanham Act, or deny Defendants' motion on those grounds.

Respectfully submitted,

SEYFARTH SHAW LLP

Dated: March 18, 2011            By: _____
Eddy Salcedo (esalcedo@seyfarth.com)
620 Eighth Avenue
New York, New York 10018-1405
Tel. (212) 218-5500
Fax (212) 218-5526

and

Christopher C. Larkin (clarkin@seyfarth.com)
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
Tel. (310) 201-5289
Fax (310) 201-5219
*Attorneys for Plaintiff*